# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. GREEN, in his capacity as trustee of the Steven R. Green Living Trust Dated July 10, 2000,<br><br>         Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, et al.,<br><br>         Defendants. | Case No.: 20-cv-1046-LAB-SBC<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT [Dkt. 30]** |

## I.  INTRODUCTION AND BACKGROUND

Plaintiff Steven R. Green purchased property in June 2001 at 15785 Boulder Creek Road, Descanso, California 91916, located in the Cleveland National Forest. (Dkt. 28, Second Amended Compl. ("SAC") ¶ 19). Green purchased his property with the understanding it was accessible via a dirt road called McCoy Ranch Road ("MRR") and that MRR was a public road as the San Diego Superior Court declared in November 1991. (*Id.* ¶¶ 2, 6, 38, 40, 47, 51, 123–24, 138). Since June 2001, Green has used and maintained MRR to access his property when he visited San Diego or to allow other individuals that he contracted with to access his property for cattle grazing. (*Id.* ¶¶ 21–23, 122, 139).

Defendant United States Forest Service (the "Forest Service") subsequently purchased the land that MRR runs through. (*Id.* ¶ 37). The Forest Service allows National Forest visitors to use MRR to access parts of the forest. (*Id.* ¶¶ 28, 30). Due to weather, poor drainage, and public use, MRR's conditions deteriorated over several years making it unpassable by ordinary passenger vehicles. (*Id.* ¶¶ 27, 31, 41). The Forest Service hasn't maintained MRR since it purchased the land, (*id.* ¶ 37), because it isn't allowed to allocate funds to land not part of the National Forest System Road, (*see id.* ¶ 62).

In January 2019, Green and his neighbor contacted the Forest Service to maintain MRR as an all-weather dirt road. (*Id.* ¶ 52). After back-and-forth discussions, on February 28, 2019, the Forest Service sent Green a road maintenance agreement that outlined what maintenance would be allowed on MRR. (*Id.* ¶¶ 53–59). On May 2, 2019, after more back-and-forth discussions, Green and his neighbor agreed to an emergency permit to maintain all but the last 135 yards of MRR leading to Green's property, which were excluded for archaeological concerns. (*Id.* ¶¶ 60–89). On May 7, 2019, contractors hired by Green and his neighbor completed work on MRR. (*Id.* ¶ 89).

On May 8, 2019, Green requested to meet with the Forest Service to discuss maintenance of the 135 yards excluded from the emergency permit. (*Id.* ¶¶ 92, 104). Nine days later, the Forest Service met with Green and informed him there were archeological resources near the final 135 yards stretch of MRR and that he could maintain the road after an environmental review was conducted. (*Id.* ¶¶ 92, 107). On December 18, 2019, the Forest Service notified Green that it was in the early stages of an environmental assessment that would add portions of MRR to the Forest System Road, which the Forest Service would then maintain. (*Id.* ¶ 98). Based on the on-going assessment, the Forest Service considered MRR's current state to provide reasonable access to the inholdings and meet the standard of at least a "maintenance level 2" road, which is neither suitable for passenger cars

nor passable during periods of inclement weather. (*Id.* ¶¶ 98, 118, 135). The Forest Service suggested Green apply for a special use permit if he wanted to maintain MRR to a higher standard. (*Id.* ¶¶ 99, 119, 170). Green didn't apply for a permit, instead filing this action on June 8, 2020. (Dkt. 1, Compl.).

Green's initial Complaint alleged the Forest Service violated the Fifth Amendment's Takings Clause and violated his Due Process rights by depriving him of a constitutionally protected interest without adequate procedural protections. (*See id.*). He also sought relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.*). On March 15, 2022, the Court: (1) dismissed Green's Takings Clause claim with leave to amend; (2) ordered Green to show cause why his Due Process claim shouldn't be dismissed for lack of subject matter jurisdiction; and (3) dismissed with prejudice Green's claim under the Declaratory Judgment Act. (Dkt. 14). Green responded to the Court's order by filing a brief. (Dkt. 15).

On July 28, 2022, the Court dismissed Green's Due Process claim, but allowed Green to file a First Amended Complaint ("FAC") to amend his Takings Clause claim and file a motion for leave to amend his Due Process claim. (Dkt. 17). Green filed his FAC and requested leave to amend his Due Process claim. (Dkt. 19, 20). On February 27, 2023, the Court granted Green's motion for leave and ordered him to file a SAC no later than March 1, 2023. (Dkt. 27).

On February 28, 2023, Green filed his SAC alleging the same three causes of action in his initial Complaint. (*See* SAC). On March 15, 2023, the Forest Service filed a motion to dismiss the SAC ("Motion"). (Dkt. 30). Having considered the parties' submissions and the relevant law, the Court **GRANTS** the Forest Service's Motion.

## II.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only that power "authorized by Article III of the United States Constitution and statutes enacted by

Congress pursuant thereto." *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also, e.g.*, 28 U.S.C. § 1331; 5 U.S.C. § 702. A court must dismiss any action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) calls on the court to evaluate whether the plaintiff's claims fall within that jurisdiction. The plaintiff bears the burden of showing that they do. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). A defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating a lack of jurisdiction over the case. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). District courts "resolve[] a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted).

A Rule 12(b)(6) motion to dismiss, on the other hand, tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547

(2007)). A claim is plausible if the factual allegations supporting it permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ultimately, a court must determine whether the plaintiff's alleged facts, if proven, permit the court to grant the requested relief. *See id.* at 666; Fed. R. Civ. P. 8(a)(2). The court needn't accept legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## III.   ANALYSIS

The SAC brings three claims for relief. First, Green seeks injunctive relief and compensatory damages for the Forest Service's alleged unlawful taking of his property. (SAC ¶¶ 161–62). Second, he alleges the Forest Service violated his property rights without procedural due process by (1) implementing a permit process when a permit wasn't required when he originally purchased the property in 2001 and (2) classifying MRR as a "maintenance level 2" road meaning it isn't suitable for passenger cars. (*Id.* ¶¶ 127, 166–170). Third, he seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* ¶¶ 173–75). The Court addresses each in turn.

### A.   Violation of the Takings Clause

Green first seeks injunctive relief and compensatory relief under the Fifth Amendment's Takings Clause. (*Id.* ¶¶ 161–62). The Takings Clause "proscribes taking [private property] without just compensation." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 608–09 (2013) ("[T]he Fifth Amendment mandates a particular remedy—just compensation—only for takings."). The Takings Clause protects only the right to *compensation* for a taking of private property for public use, "[e]quitable relief is not available to enjoin [such a] taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *see also Knick*, 139 S. Ct. at 2176 ("Today, because the federal and nearly all

state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."); *Bay View, Inc. v. Ahtna, Inc.*, 105 F.3d 1281, 1286 n.6 (9th Cir. 1997) ("[N]either injunctive nor declaratory relief is available for a takings claim against the United States.").

When a plaintiff seeks compensatory damages for an alleged unlawful taking, district courts have concurrent jurisdiction with the Court of Federal Claims over any claim "not exceeding $10,000 in amount." 28 U.S.C. § 1346(a)(2); *see United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 927 (9th Cir. 2009). However, the Court of Federal Claims possesses exclusive jurisdiction over takings claims in excess of $10,000. *See* 28 U.S.C. § 1491(a)(1); *see also Park Place*, 563 F.3d at 927. A plaintiff "may waive [his] right to receive more than $10,000 in order to . . . obtain jurisdiction in [a] district court," but absent such a waiver, the Court of Federal Claims retains exclusive jurisdiction. *See Park Place*, 563 F.3d at 927–28.

Here, Green seeks both injunctive relief and compensatory damages. (SAC ¶¶ 161–62). The SAC doesn't allege the lack of "an adequate provision for obtaining just compensation" for the alleged taking. *Knick*, 139 S. Ct. at 2176. Therefore, "there is no basis to enjoin the government's action effecting a taking." *Id.*; *see also Bay View*, 105 F.3d at 1286 n.6. A takings claim seeking injunctive relief can be dismissed for failure to state a claim under Rule 12(b)(6). *See Knick*, 139 S. Ct. at 2179 ("As long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed."). Insofar as Green is still seeking injunctive relief, the Court previously dismissed that claim without prejudice, (*see* Dkt. 14 at 4), but it's now **DISMISSED WITH PREJUDICE**.

Green also seeks just compensation for the Forest Service's alleged taking. (SAC ¶ 162). Green claims the Forest Service's taking has "caused the loss of all

economically beneficial/productive uses of [his] land," (*id.* ¶ 159), and asserts "[the Forest Service] must pay the market value of the seized property," (*id.* ¶ 156), because he "lost the use and enjoyment of his property," (*id.* ¶ 160). The Forest Service argues the amount owed would be in excess of $10,000 if a taking occurred of Green's property, so the Court of Federal Claims has exclusive jurisdiction under 28 U.S.C. § 1491(a)(1). (Dkt. 30 at 4). Green argues the Court may retain jurisdiction until the now-uncertain amount in controversy is proven at trial. (Dkt. 31 at 5–6 (citing *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed. Cir. 1985)). But the Court isn't required to accept jurisdiction over uncertain claims when the request for damages isn't limited to $10,000 or less. *See Park Place*, 563 F.3d at 927–28; *see also Matsuo v. United States*, 416 F. Supp. 2d 982, 994–95 (D. Haw. 2006) (dismissing claims for damages when plaintiffs didn't limit their request for damages to $10,000 or less). Even if the amount in controversy is uncertain now, it's more likely to be in excess of $10,000 should a court find a taking occurred because Green wants the Forest Service to "pay the market value of the seized [163 acres] property" that he is no longer able to use for agricultural operations and as a personal residence. (SAC ¶ 156). The Court lacks subject matter jurisdiction over the Takings Clause claim because exclusive jurisdiction lies with the Court of Federal Claims. The Motion is **GRANTED** as to the Takings Clause claim, and it's **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**. Green can file this claim with the Court of Federal Claims.

### B. Violation of the Due Process Clause

Green's second claim for relief is for violation of his procedural due process rights. (*Id.* ¶¶ 163–171). Other than updated paragraph numbers, the procedural due process claim and supporting factual allegations in the SAC are largely identical to the allegations brought in the FAC and original Complaint. The SAC newly alleges the Forest Service violated his due process rights when the Forest Service: (1) "newly created" a permit requirement in order to maintain MRR, when

this requirement didn't exist at the time that Green purchased the property in 2001; and (2) classified a "key portion" of the road as a "maintenance level 2" road, resulting in that portion being unsuitable for passenger cars. (*Id.* ¶ 127). The Court has addressed the shortcomings of Green's due process allegations twice, ultimately dismissing the claim with leave to amend. (*See* Dkt. 14, 17). There is no reason to reconsider those decisions now, so the Court addresses only the new allegations in the SAC.

Neither a permit requirement nor the decision to eventually categorize MRR as a "maintenance level 2" road amount to a deprivation of property under the Fifth Amendment. "The Due Process Clause of the Fifth Amendment forbids the federal government from depriving persons of 'life, liberty, or property, without due process of law.'" *Clouser v. Espy*, 42 F.3d 1522, 1540 (9th Cir. 1994). Here, the Forest Service needn't provide notice nor an opportunity to be heard because it didn't deprive Green of access to his property.

The Court disagrees that the permit requirement to maintain MRR deprived Green of his due process rights. "A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. . . . Only when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127 (1985). Even if Green has a right to access his property, the Forest Service can still regulate his access pursuant to the Federal Land Policy Management Act and the Alaska National Interest Lands Conservation Act. *See, e.g.*, *Adams v. United States*, 3 F.3d 1254, 1259 (9th Cir. 1993); *see also* 16 U.S.C. § 3170(b) (rights are subject to reasonable regulations to protect the natural and other values of such lands).

Here, Green recognizes the Forest Service has federal regulatory power over National Forest land, which includes the land under MRR. (Dkt. 31 at 7). The Forest Service notified Green and his neighbor that there was an area of MRR that "cannot be bladed due to archeological concerns" on March 4, 2019. (SAC ¶ 62). The day after Green and his neighbor completed maintenance on MRR, excluding the final 135 yards, (*id.* ¶ 89), on May 8, 2019, Green contacted the Forest Service to discuss maintenance of the final 135 yards, (*id.* ¶ 92). The Forest Service advised Green that there were archeological resources near the final 135 yards and that it was working on conducting an environmental review of the surrounding area. (*Id.* ¶¶ 92–93). The Forest Service also informed Green that it was in the "early stages" of adding a portion of MRR to the Forest Road System, (*id.* ¶ 98), and that Green could seek a special use permit to maintain the road to a higher standard, (*id.* ¶ 99). Instead, Green deliberately refused to engage in the permit process because it "would be futile" to do so. (*Id.* ¶ 170). Whether the permitting requirement is new isn't relevant. The Forest Service didn't deprive Green of his property rights, so it wasn't required to provide due process protections. *See Clouser*, 42 F.3d at 1540. Green also has an opportunity to apply for a special use permit if he wants to maintain the final 135 yards of MRR while the Forest Service conducts its environmental assessment, which is an opportunity to be heard on his concerns. *See Riverside Bayview Homes*, 474 U.S. at 127.

As to the SAC's second new allegation: the Court disagrees that the Forest Service's decision to deem a portion of MRR as a "maintenance level 2" road, resulting in that portion being unsuitable for passenger cars, deprived Green of due process. "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *W. Linn Corp. Park L.L.C. v. City of W. Linn*, 534 F.3d 1091, 1099 (9th Cir. 2008) (quoting *S. Pac. Transp. Co.*

*v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990)). Here, Green's claim is unripe because the Forest Service hasn't classified MRR as a "maintenance level 2" road yet. (*See* SAC ¶¶ 62 ("Unfortunately, this is not a National Forest System Road it is under a Special Use Permit."), 98 ("The Forest Service has an Environmental Assessment in the early stages to add the portion of [MRR] on [National Forest] land to the Forest Road System . . . If added, the USFS would maintain the road . . . [but i]n its current state, the Forest [Service] considers the road to provide reasonable access to the inholdings and is at least at what we refer to as 'maintenance level 2.'") (second alteration in original)). Even assuming the Forest Service already deemed MRR a "maintenance level 2" road, Green wasn't deprived of a property right because he can apply for a special use permit even if he believes doing so is futile. (*Id.* ¶ 99). Until the permit is denied and the denial prevents the economically viable use of Green's land, a taking hasn't occurred. *See Riverside Bayview Homes*, 474 U.S. at 127. The Motion is **GRANTED** as to Green's procedural due process claim,[1] and that claim is **DISMISSED WITH PREJUDICE** because Green still has an opportunity to apply for a special use permit to maintain MRR and voice his concerns in the permitting process.

### C.   Declaratory Judgment Act

As the Court noted in its March 15, 2022 Order, the Declaratory Judgment Act doesn't support a standalone claim, but may provide a remedy for other claims. (Dkt. 14 at 6). The Court dismissed with prejudice this standalone claim, and Green hasn't challenged the Court's decision. Notwithstanding its prior dismissal, Green again included a claim under the Declaratory Judgment Act in

---

[1] Although the Court's February 27, 2023 Order determined Green had alleged new and sufficient facts to warrant leave to amend, (Dkt. 27 at 6–7), which the Forest Service opposed, that Order didn't decide whether the allegations would survive a motion to dismiss.

his SAC, arguing the claim is proper because he may seek remedies provided by the statute in connection with other claims. (Dkt. 31 at 8). Even if true, the Court has dismissed the SAC's other claims, leaving only the claim under the Declaratory Judgment Act. There is no relief available for this standalone claim, so the Motion is **GRANTED** as to the Declaratory Judgment Act claim, which is again **DISMISSED WITH PREJUDICE**.

## IV.   CONCLUSION

The Forest Service's motion to dismiss the SAC is **GRANTED**. Green's Takings Clause claim is **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** and his Due Process and Declaratory Judgment Act claims are **DISMISSED WITH PREJUDICE**. Because leave to amend may be denied where, as here, amendment would be futile, the Court **DENIES** Green leave to amend. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *see also Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (district court's discretion to deny leave to amend is "particularly broad" when it has previously granted leave to amend). The Clerk of the Court is directed to terminate this case.

**IT IS SO ORDERED**.

Dated:  August 16, 2023

_____
Honorable Larry Alan Burns
United States District Judge